344 A.2d 842

**COMMONWEALTH of Pennsylvania**

**v.**

**Michael JACKSON, Appellant.**

Supreme Court of Pennsylvania.

Argued June 23, 1975.

Decided Oct. 3, 1975.

---

Albert Ominsky, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., MariAnne E. Cox, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellant stands convicted of murder in the second degree. In this appeal, he raises three grounds for reversal of that conviction. First, appellant challenges the sufficiency of the evidence to support the conviction. Second, he argues that the trial court improperly allowed the prior testimony of an absent eyewitness to be read into the record without the Commonwealth initially demonstrating a good faith effort to obtain the witness' presence. Finally, he maintains that as a principal in the second degree, his conviction cannot be upheld where the alleged perpetrator of the homicide has been subsequently found not guilty.[1]

---

1. Appellant's co-defendant obtained a directed verdict in his favor only shortly before this appeal was argued. Consequently, the issue as drawn could not have been presented in post-trial motions. Although normal appellate procedure precludes consideration of an issue not properly preserved in post-trial motions, the impossibility of such preservation with respect to this issue allows us to consider the merits of the argument. Furthermore, any remand of the matter to the trial court for disposition of the issue would be judicially uneconomic.

■  The evidence adduced at trial demonstrated that the appellant, Michael Land, and Earl Webster undertook to avenge an assault of a friend by a rival gang. The appellant and Land were to distract the attention of the intended victim and Webster was to attack from the rear. While the plan was developing, a shot fatally wounded a bystander. The trial testimony of Michael Land and an eyewitness' prior testimony from an earlier mistrial established that the shot came from the direction of Webster and that Webster had had a gun in his hand. Viewing this direct and circumstantial evidence, together with all reasonable inferences therefrom, in a light most favorable to the Commonwealth, *Commonwealth v. Townes,* 460 Pa. 709, 334 A.2d 599 (1975); *Commonwealth v. Williams,* 458 Pa. 319, 326 A.2d 300 (1974), one could conclude that a conspiracy was formed and that in the furtherance of that conspiracy, a participant shot and killed a bystander. Although some evidence supporting the conviction is circumstantial, the evidence taken as a whole is sufficient to sustain appellant's conviction. *Commonwealth v. Vaughn,* 459 Pa. 35, 326 A.2d 393 (1974); *Commonwealth v. Figueroa,* 456 Pa. 381, 321 A.2d 658 (1974); *Commonwealth v. Pierce,* 437 Pa. 266, 263 A.2d 350 (1970).

■■  The evidence we have considered as sufficient to support the appellant's conviction includes the testimony of an eyewitness, Mark Dorsey. Dorsey was absent from the trial, but he had previously testified under oath and subject to cross-examination in an earlier mistrial of appellant.

Appellant recognizes that prior sworn testimony is admissible in a subsequent proceeding where the witness cannot be found and the defense has had an opportunity for cross-examination. Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582; *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Beach,* 445 Pa. 257, 284 A.2d 792 (1971). However, "[a] witness 'cannot be

found,' within the meaning of section 3 of the Act of May 23, 1887, only if a good-faith effort to locate the witness and compel his attendance at trial has failed." *Commonwealth v. Blair*, 460 Pa. at 32, 331 A.2d at 214.

Here, the absent witness was living at St. Michael's School for Boys near Scranton, Pa. When notified by the District Attorney's office that he would be called as a witness, his grandmother contacted the school authorities who released the boy into her custody. He arrived at her home in Philadelphia the evening before trial. As the grandmother was preparing to leave for court the next morning, the child disappeared. When the grandmother could not find him, she came to court alone and informed the District Attorney of the boy's disappearance. A subsequent phone check to the grandmother's home went unanswered. To establish unavailability, the Commonwealth called the grandmother who, in addition to the facts outlined above, testified that the child had a history as a runaway.

The appellant compares the Commonwealth's efforts to secure the witness' presence in this case with those expended in *Commonwealth v. Blair, supra,* and *United States ex rel. Oliver v. Rundle*, 417 F.2d 305 (3d Cir. 1969). He concludes that no good-faith attempt was made and that, therefore, the trial court erroneously allowed the prior testimony to be recorded. We cannot agree.

When a ruling is made on the admissibility of prior testimony, "[t]he question of the sufficiency of the preliminary proof as to the absence of a witness is largely within the discretion of the trial judge." *Commonwealth v. Miller*, 203 Pa.Super. 511, 516, 201 A.2d 256, 259 (1964). *Accord Commonwealth v. Beach, supra.* Although the efforts to locate the witness after his disappearance were not as extensive as those in *Blair* or *Oliver*, the Commonwealth had initiated the witness' transfer from Scranton to Philadelphia. It presented evidence

that the child mysteriously disappeared shortly before trial and that he had previously run away "many times." We cannot say that the trial court here abused its discretion when it admitted the prior testimony.[2]

■ We also cannot accept appellant's argument that his conviction, premised on the existence of a conspiracy, cannot stand where the person who allegedly perpetrated the homicide has been judged not guilty. Statute rebuts this argument:

"An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted."

Act of December 6, 1972, P.L. 1482, No. 334, § 1(g), 18 C.P.S.A. § 306(g).[3]

Judgment of sentence affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

**2.** In *Commonwealth v. Fasion,* 452 Pa. 137, 305 A.2d 44 (1973), this Court held that attempts to contact a witness by telephone were insufficient to establish good-faith efforts to secure trial attendance. Here after advised of Dorsey's disappearance, one phone call was placed. If the Commonwealth's proof of unavailability rested solely on that phone call, reversal would be demanded. However, the Commonwealth also proved that Dorsey was a frequent runaway. The trial court could reasonably conclude that any search would be futile.

**3.** Although the quoted statute was not in effect at the time of trial, it became effective in the interim between the conclusion of trial and the imposition of sentence. In any event, it is substantially equivalent in purpose to an earlier enactment. Act of June 24, 1939, P.L. 872, § 1105, as amended by Act of May 21, 1943, P.L. 306, § 1. *See* Model Penal Code, § 2.06(7), and Model Penal Code, § 2.04(6), Comments (Tent.Draft No. 1, 1953).

ROBERTS, Justice (dissenting).

Because the Commonwealth failed to make a good faith effort to locate the missing witness, I must conclude that admission of the witness's prior testimony was improper under the terms of the Act of 1887 [1] and impermissible under the confrontation clause of the Constitution of the United States.[2] I therefore dissent.

Appellant's trial was scheduled to begin on November 13, 1972. In preparation for trial, the Commonwealth notified the grandmother of a witness, Mark Dorsey, that Mark was to testify at trial. The Commonwealth also contacted the officials at St. Michael's School for Boys where Mark was committed and arranged to have him released to his grandmother's custody so that he would be available to testify. On the morning of the trial, Mark's grandmother left Mark alone for a few minutes in front of her house. He took advantage of the opportunity to run away.

The grandmother upon discovering that Mark had disappeared, proceeded to the courthouse alone. Upon reaching her destination she called her home to determine if Mark had returned. When her call went unanswered, she informed the district attorney of Mark's flight. She later testified during trial that Mark had run away on previous occasions and that she had no idea where he might be.

Upon learning that Mark had absconded, the district attorney made no effort to contact the grandmother's neighbors or Mark's friends to determine if they had seen Mark or knew of his whereabouts. Nor did he ask the police to seek the witness in the neighborhood where

1. Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582 (1964).

2. The confrontation clause of the Sixth Amendment of the Constitution of the United States is made applicable to the states by virtue of the due process clause of the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

he was last seen. Instead, content with the thought that he might still have Mark's testimony introduced into evidence by reading the transcript of the prior trial into the record, the district attorney did nothing.

The use of the prior testimony of a witness who is unavailable at time of trial is permissible under the confrontation clause because the previous opportunity for cross-examination " 'afford[s] the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), quoting *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970).[3] Nevertheless, the confrontation clause requires that, where possible, the prosecution must afford the defendant an opportunity for cross-examination in which the accused may test the recollection and sift the conscience of the witness and compel him to stand face-to-face with the jury in order that they might judge from his words, his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Although use of prior testimony may be permitted by the confrontation clause, it is clear that the prosecution may avail itself of this less-preferred technique only when it makes a good faith effort to secure the attendance of the witness and fails. *Barber v. Page,* supra (prosecution may not use prior testimony of witness incarcerated in another state where it has failed to make a good faith effort to have custody transferred to permit witness's appearance at accused's trial) ; compare *Mancusi v. Stubbs,* supra (prosecution may use prior testimony of witness residing in another

---

3.  "This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968).

country despite absence of any effort to obtain his attendance because there was no procedure by which his attendance could be compelled); see also *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Similarly, in interpreting the Act of 1887, we held that prior testimony is admissible under the provisions of that statute only when a good faith effort has failed to locate the missing witness. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975).

In the present case, upon learning that the witness had absconded, the district attorney failed to make even the most minimal efforts to find the witness.[4]  In *Blair* we stated that the Commonwealth need not prove that "the witness has disappeared from the face of the earth" in order to have his prior testimony admitted.  Here, the Commonwealth failed even to try to establish that the witness had left the block where he was last seen.  I cannot conclude that in this case the Commonwealth did enough to establish the necessity of limiting appellant's rights of confrontation and cross-examination.  In these circumstances I cannot agree that the Commonwealth made the good faith effort necessary to comply with the terms of the statute or the dictates of the confrontation clause.  I dissent.

MANDERINO, J., joins in this dissenting opinion.

4. The district attorney apparently knew of the missing witness before appellant's non-jury trial began.  Therefore the delay that might accompany an attempt to locate the witness would not have seriously stalled a trial already in progress.