382 A.2d 1196

**COMMONWEALTH of Pennsylvania**

v.

**Cornell GALLOWAY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1976.

Decided Jan. 26, 1978.

Penn B. Glazier, Lancaster, for appellant.

D. Richard Eckman, Dist. Atty., Michael H. Ranck, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

Appellant, Cornell Galloway, was found guilty by a jury of murder in the second degree in connection with the fatal

shooting of one Robert Lee Jones.[1]  Following the denial of post-verdict motions, appellant was sentenced to a term of not less than ten nor more than twenty years imprisonment. In this direct appeal,[2] Galloway advances seven assignments of error in support of a new trial.  Because we agree with appellant that it was error for the trial court to allow the prior recorded testimony of one of the Commonwealth's witnesses to be read into evidence at appellant's trial, we reverse the judgment of sentence and remand the case for a new trial.[3]

The relevant facts are not in dispute.  On May 30, 1971, the dead body of Robert Lee Jones was discovered in the apartment of appellant's estranged wife, Deborah Galloway. Two persons, appellant and one George Quinn, were charged with the killing of Jones.  Quinn was arrested on the day of the shooting, but appellant remained at large for some time. Prior to the apprehension of appellant, Quinn was brought to trial and acquitted.  During this trial Quinn gave testimony which implicated appellant in the shooting of Jones.

1.  For the prior procedural history of this case see *Commonwealth v. Galloway*, 460 Pa. 309, 333 A.2d 741 (1975).

2.  This Court has jurisdiction pursuant to § 202(1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977–1978).

3.  In light of our disposition of this case, we need not reach the other issues raised by appellant.  Those issues are as follows: (1) whether the trial court erred in refusing to declare a mistrial when the remark "[e]verybody knows Cornell always has a gun with him" was read to the jury from the prior testimony of a Commonwealth witness; (2) whether the trial court erred in allowing the Commonwealth to cross-examine one of its own witnesses when that witness allegedly did not testify adversely to the Commonwealth; (3) whether a statement made by appellant's wife was erroneously admitted as part of the *res gestae;* (4) whether the trial court erred in refusing to grant a mistrial when a Commonwealth witness made reference to the fact that another Commonwealth witness had been taken to the police station to view certain photographs; (5) whether the trial court erred in allowing a Commonwealth witness to testify that appellant had made no statement after he received his *Miranda* warnings; (6) whether the trial court erred in refusing to grant a mistrial when the Assistant District Attorney asked a Commonwealth witness if she had seen appellant's wife on the day of the trial.

At appellant's trial, Quinn was called by the Commonwealth to testify as he had at his own trial relative to Galloway's involvement. Upon being sworn and questioned, Quinn invoked his Fifth Amendment privilege against self-incrimination. Although informed that he had been granted immunity from prosecution, Quinn persisted in his refusal to testify. The trial court then placed Quinn in custody with a copy of the transcript of the testimony he gave at his own trial. When recalled to the stand the next day and questioned by the Assistant District Attorney concerning the events surrounding Jones' death, Quinn testified that although he had read the notes of his testimony from his own trial at least twelve times, he had no present recollection of the facts which he related at his own trial, and had no present recollection regarding the accuracy of the transcript of his testimony from that trial.

Apparently in order to refresh Quinn's recollection of the events to which he had previously testified, the Commonwealth was allowed, over appellant's objection, to cross-examine Quinn as to his claim that he could not remember what happened by reading to him portions of his prior testimony. When this proved unavailing, the Commonwealth requested and, again over appellant's objection, was permitted to read into the record the entire direct testimony Quinn gave at his own trial.

Galloway contends that because he was not present at Quinn's trial and had no opportunity to cross-examine Quinn, the admission of Quinn's former testimony violated state evidentiary law as well as appellant's Sixth Amendment right of confrontation.[4] It is settled law in this Commonwealth that "well-recognized exceptions to the hearsay rule supported by circumstances guaranteeing sufficient 'indicia of reliability' do not raise confrontation problems." *Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972); *Commonwealth v. Ransom*, 446 Pa. 457, 461, 288

4. The Sixth Amendment right to confront opposing witnesses was made applicable to the States through the Fourteenth Amendment in *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

A.2d 762, 764 (1972). Accordingly, before addressing the merits of the constitutional question raised by appellant, it is appropriate first to determine whether Quinn's prior testimony was admitted properly under the hearsay exception for former testimony. Galloway's confrontation claim becomes ripe for review only if Quinn's former testimony is found to have been correctly admitted under state evidentiary law.

In Pennsylvania the admission of the testimony of a witness given at a prior trial is governed by the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582, which reads in relevant part as follows:

> "Whenever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue; . . . ."

It is clear from a reading of the above statute that before the former testimony of a witness may be admitted in a criminal case, four specific requirements must be satisfied. (1) The witness must be unavailable: *Commonwealth v. Jackson,* 463 Pa. 301, 344 A.2d 842 (1975); *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Turner,* 389 Pa. 239, 133 A.2d 187 (1957). (2) The testimony sought to be introduced must have been taken at a criminal proceeding "in or before a court of record": *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977); *Commonwealth v. Velasques,* 449 Pa. 599, 296 A.2d 768 (1972); *Commonwealth v. Lenousky,* 206 Pa. 277, 55 A. 977 (1903). (3) The defendant must have been present at the time the former testimony was taken and must have had an opportunity to "examine or cross-examine" the witness: *Commonwealth v.*

*Rodgers, supra; Commonwealth v. Jackson, supra; Commonwealth v. Beach,* 445 Pa. 257, 284 A.2d 792 (1971); *Commonwealth v. Lenousky, supra.* (4) The trial at which the former testimony is sought to be introduced must involve the same "criminal issue": *Commonwealth v. Faison,* 452 Pa. 137, 305 A.2d 44 (1973); *Commonwealth v. Velasques, supra; Commonwealth v. Ryhal,* 274 Pa. 401, 118 A. 358 (1922); *Commonwealth v. Hall,* 232 Pa.Super. 412, 334 A.2d 710 (1975). If any one of the above mentioned factors is absent, the former testimony is inadmissible under the statute.

In this case, there is no doubt that the admission into evidence of Quinn's former testimony was not permissible under the Act of 1887; neither appellant nor his counsel was present at the time Quinn testified at his own trial and there was therefore no opportunity to "examine or cross-examine" Quinn.[5] See *Commonwealth v. Hall, supra.* The Commonwealth argues, nevertheless, that appellant had sufficient opportunity to cross-examine Quinn during the present trial. Such a conclusion, however, presupposes that Quinn was willing or able to cooperate with the defense[6] and further, necessitates a finding that Quinn is now available for cross-

5. In ruling Quinn's former testimony admissible, the trial court relied heavily on the fact that Quinn was "unavailable" for questioning. We note that there is considerable authority in support of the proposition that unavailability may be found where, following testimony in a prior proceeding, a witness either suffers from lack of memory (see *United States v. Hughes,* 411 F.2d 461 (2d Cir. 1969); Henry, Pennsylvania Evidence, Vol. I, § 480, p. 486 (1953); McCormick on Evidence, § 253, p. 611 (2nd Ed.1974); 5 Wigmore on Evidence, § 1408, p. 223 (1974); Federal Rules of Evidence, Rule 804(a)(3)) or refuses to cooperate (*United States v. Mobley,* 421 F.2d 345 (5th Cir. 1970); *Mason v. United States,* 408 F.2d 903 (10th Cir. 1969); McCormick on Evidence, § 253, p. 612 (2nd Ed.1972); Federal Rules of Evidence, Rule 804(a)(2)). However, even assuming that the witness was properly declared unavailable, it does not follow that his prior testimony is therefore admissible. It still remains to be shown that the other pre-requisites of the Act of 1887 are satisfied. *See* discussion, *supra.*

6. Such an argument additionally presupposes that witness Quinn's motive for testifying is the same in both trials and that the demeanor and recollection of the witness have remained constant during the 6-month interval between the trials of Quinn and Galloway.

examination even though the introduction of his direct testimony from the earlier trial was premised upon his present unavailability. In the context of the present case, we believe a ruling of unavailability, if proper, requires the conclusion that Quinn was unavailable for all purposes. The use of Quinn's former testimony falls within no recognized exception to the hearsay rule and its admission into Galloway's trial was, therefore, error.[7]

As a final argument, the Commonwealth reasons that introduction of the prior testimony, even if error, was harmless. The testimony of Quinn was, however, the only evidence introduced to indicate that Quinn himself was not present in the apartment at the time of the alleged shooting. Further, and more importantly, part of the direct examination of Quinn which was read to the jury contained a statement by Quinn's attorney that "Mrs. Galloway testified that everybody knows Cornell always has a gun with him." This was the only evidence presented at appellant's trial which linked appellant with a gun. While proof that appellant carried a gun is not necessary to support a finding of guilt, we cannot conclude that appellant was not seriously prejudiced by this statement.

Judgment of sentence reversed and case remanded for a new trial.

JONES, former C. J., did not participate in the decision of this case.

---

7. As noted at the outset, Galloway also claims that admission of Quinn's former testimony violated the appellant's Sixth Amendment right of confrontation. While this no doubt follows from a finding of a violation of the rule against the use of hearsay statements, we see no need to frame our decision in constitutional terms since the evidentiary error was itself reversible error in the present case. Compare *Commonwealth v. McDowell*, 460 Pa. 474, 333 A.2d 872 (1975).