**Ernest K. JONES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–1343.**

District of Columbia Court of Appeals.

Argued Dec. 9, 1981.

Decided March 8, 1982.

---

J. Edward Agee, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Michael W. Farrell, and E. Thomas Roberts, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted by a jury of armed robbery, D.C.Code 1981, §§ 22–2901, –3202; three counts of carrying a pistol without a license, D.C.Code 1981, § 22–3204; second-degree murder while armed, D.C.Code 1981, §§ 22–2403, –3202; and two counts of attempted robbery while armed, D.C.Code 1981, §§ 22–2902, –3202. He was sentenced to a prison term of fifteen years to life for second-degree murder while armed; a concurrent term of five to fifteen years for one count of attempted robbery while armed; a consecutive term of five to fifteen years for the other attempted robbery while armed; three concurrent terms of four to twelve months for the counts of carrying a pistol without a license; and a consecutive term of five to fifteen years for armed robbery. The issue on appeal is whether the court erred in permitting the prosecutor to introduce at trial a witness' prior recorded testimony. We affirm.

The evidence was that on March 30, 1979, Officer James A. Watson of the United States Park Police witnessed appellant Jones handing a gun to one Ricky Smith on Pennsylvania Avenue in Washington, D.C. Watson chased Smith, who discarded the gun which was recovered by a uniformed police officer within minutes. Bullets taken from the body of one Blane Pitt, who was shot and killed on March 30, 1979, were identified as having been fired from that gun.

At appellant's first trial, Smith testified that he and appellant robbed a security guard of his pistol on March 13, 1979, and that appellant handed Smith that pistol on Pennsylvania Avenue on March 30, 1979. A mistrial was thereafter declared when the

William J. Mertens, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom and Andrew L. Lipps, Public Defender Service, Washington, D. C., were on the briefs, for appellant.

prosecutor's father died during the course of the trial. On Friday, June 27, 1980, during appellant's second trial, the prosecutor announced that Smith refused to testify. Smith stated that he had not been threatened or coerced, yet he continued to refuse to testify during a voir dire examination conducted by the court out of the presence of the jury. Smith was cited for contempt and an attorney was appointed to represent him.

On Monday, June 30, 1980, appointed counsel told the court that Smith feared for his life and would not testify under any circumstances despite the government's offer to protect him by changing his name and relocating him. The court asked Smith to change his mind; Smith refused. After Smith repeated his refusal to testify before the jury, a tape recording of his testimony from appellant's first trial was played to the jury. Smith's refusal to testify insulated him from further cross-examination and the jury had no opportunity to observe his demeanor while testifying.

 Appellant contends that the trial court's allowance in evidence of Smith's prior recorded testimony violated his Sixth Amendment right to confront the witnesses against him.[1] When a hearsay declarant is not present for cross-examination at trial, the confrontation clause and the common law require a showing of reliability and unavailability. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *see Warren v. United States*, D.C. App., 436 A.2d 821, 825 (1981):

> The common law of this jurisdiction recognizes that prior recorded testimony is admitted into evidence as an exception to the hearsay rule when
>
> (1) the direct testimony of the declarant is unavailable, (2) the former testimony was given under oath or affirmation in a legal proceeding, (3) the issues in the two proceedings were substantially the same, and (4) the party against whom the testimony now is of-

fered had the opportunity to cross-examine the declarant at the former proceedings. [*Henson v. United States*, D.C.App., 399 A.2d 16, 19, *cert. denied*, 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979) (quoting *Alston v. United States*, D.C.App., 383 A.2d 307, 315 (1978)).]

Of these four, only the issue of unavailability of the witness is contested in this appeal.

 As to reliability, cross-examined trial testimony is a hearsay exception to the confrontation clause which rests upon such solid foundations that virtually any such evidence is deemed reliable. *Ohio v. Roberts, supra* 448 U.S. at 66 n.8, 100 S.Ct. at 2539. At appellant's first trial, Smith was cross-examined about the March 13, 1979 robbery of a security guard, including the inconsistencies between his trial testimony and his grand jury testimony concerning that incident. He was also cross-examined about his March 30, 1979 arrest, his plea bargains in exchange for testimony, his heroin habit, and his activities as a police informant. We conclude, therefore, that Smith's cross-examination at the first trial was adequate and that, under the general rule, the trial court's decision on this issue was not error.

 The confrontation clause also gives defendants the right to have the jury observe the demeanor of witnesses against the accused. *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). In this case, the jury could monitor Smith's demeanor by listening to the tape recording of his voice while answering the questions propounded to him at the first trial. It also saw him on the stand, refusing to testify. Additionally, since appellant's attorney cross-examined Smith at the prior trial, the jury had a satisfactory basis for evaluating Smith's statements. *Ohio v. Roberts, supra* 448 U.S. at 73, 100 S.Ct. at 2542 (citing *Mancusi v. Stubbs*, 408 U.S. 204, 216, 92 S.Ct. 2308, 2314, 33 L.Ed.2d 293 (1972)).

---

1. *Warren v. United States*, D.C.App., 436 A.2d 821, 826 (1981), makes clear that D.C.Code 1981, § 14–303 provides for the admission of the prior recorded testimony only of parties, and not of witnesses. Hence, it is inapposite in this case.

■ The Sixth Amendment and common law requirements of unavailability are met when the prosecutor has made a *good faith effort* to obtain the witness' presence at trial. *Ohio v. Roberts, supra* 448 U.S. at 74, 100 S.Ct. at 2543; *Barber v. Page, supra* 390 U.S. at 724–725, 88 S.Ct. at 1321–1322; *Warren v. United States, supra* at 826. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Warren v. United States, supra* at 826–27 (quoting *Ohio v. Roberts, supra* 448 U.S. at 74, 100 S.Ct. at 2543, quoting from Justice Harlan's concurring opinion in *California v. Green,* 399 U.S. 149, 189 n.22, 90 S.Ct. 1930, 1951, 26 L.Ed.2d 489 (1970)). Here, the government told Smith that he had no Fifth Amendment privilege to refuse to testify,[2] and that refusing to testify would place him in contempt of court as well as in breach of his plea agreement. It offered him protection in exchange for his testimony. Nevertheless, Smith persisted in refusing to testify; he told the government, the trial judge in voir dire, his appointed counsel, the trial judge again, and the jury of his refusal. To continue efforts to try to convince the witness to testify would have been futile in light of his steadfastness. When there is no possibility of procuring the testimony of a witness, the law requires nothing of the prosecutor because further action would be futile. *Ohio v. Roberts, supra* 448 U.S. at 74, 100 S.Ct. at 2543.

■ Although the trial court concluded that it could not force the witness to testi-fy, appellant protests that the prosecutor should have asked the court to place Smith in criminal contempt, fine him, and sentence him to a jail term consecutive to the one he was then serving.[3] In hindsight one may think of other methods to force the testimony of a witness, *id.* at 75, 100 S.Ct. at 2543; however, this does not compel the conclusion that this prosecutor (or the court) did not exercise reasonable efforts under the circumstances. Moreover, the refusal to testify is a widely recognized category of witness unavailability. C. McCormick, Evidence § 253, at 612 (2d ed. 1972); see S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 605 (2d ed. 1977). We conclude that under these circumstances, the prosecutor fulfilled his duty to make "good faith efforts" to procure the testimony of the witness and thus find no abuse of discretion on the part of the trial judge in admitting Smith's prior trial testimony.[4] *Commonwealth of Pennsylvania v. Jackson,* 463 Pa. 301, 344 A.2d 842 (1975) (admissibility of prior testimony is within the discretion of the trial judge when there is a question of sufficiency of preliminary proof as to the absence of a witness).

Affirmed.

---

2. Smith had already pled guilty to the two charges about which he was testifying.

3. Indeed, it is argued that the court had an independent duty to imprison Smith in an effort to secure his testimony.

4. Appellant would probably also be found "unavailable" under Fed.R.Evid. 804. *See, e.g., United States v. Garner,* 574 F.2d 1141 (4th Cir. 1978); *United States v. Gonzalez,* 559 F.2d 1271 (5th Cir. 1977).