J-S06026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEROY LEVITT | |
| Appellant | No. 457 EDA 2014 |

Appeal from the Judgment of Sentence December 27, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004317-2008

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED APRIL 02, 2015**

Leroy Levitt appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County, following his convictions for attempted murder of the first degree,[1] aggravated assault,[2] and possession of an instrument of crime.[3]  Upon review, we affirm.

On March 4, 2008, Levitt and the victim, Gary Spicer, were residents of a boarding house located at 4138 Girard Avenue, Philadelphia.  That afternoon, the two men exchanged words on the porch of the house.  Both

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2502.

[2] 18 Pa.C.S. § 3502(a).

[3] 18 Pa.C.S. § 907(a).

men then walked into the house and, as Spicer was closing the front door, Levitt lunged at him with a kitchen knife. Levitt stabbed Spicer twice, once in the head and once in the shoulder. Spicer was taken to Temple Hospital for treatment.

At trial, Levitt represented himself with the assistance of standby counsel. On May 7, 2012, a jury found Levitt guilty of the aforementioned offenses. Thereafter, Levitt filed a post-verdict motion seeking a new trial. Following a hearing, the court denied Levitt's post-verdict motion on December 5, 2012. On December 27, 2012, the court sentenced Levitt to an aggregate term of 10 to 30 years' imprisonment. Levitt did not file post-sentence motions.

On January 29, 2013, Levitt filed an untimely appeal to this Court. *See Commonwealth v. Levitt*, 376 EDA 2013 (Pa. Super. 2013). We dismissed Levitt's appeal on March 28, 2013, for failure to comply with Pa.R.A.P. 3517 (governing the completion and return of a docketing statement). On April 9, 2013, Levitt filed a petition, pursuant to the Post Conviction Relief Act,[4] seeking restoration of his appellate rights *nunc pro tunc*. On January 10, 2014, by agreement of counsel, the court granted Levitt's petition and reinstated his appellate rights. This timely appeal followed.

---

[4] 42 Pa.C.S. §§ 9541-9546.

On appeal, Levitt presents the following issues[5] for our review:

1. Did the trial court err when it determined that Gary Spicer was unavailable and subsequently admitted his preliminary hearing testimony?

2. Did the trial court err when it denied Levitt's request for a continuance to retain new counsel or, in the alternative, additional time to prepare to represent himself at trial?

In his first issue, Levitt challenges the court's decision to admit the preliminary hearing testimony of Gary Spicer following its determination that Spicer was unavailable for trial. It is well settled that a criminal defendant has the right to confront and cross-examine witnesses against him at trial. *Commonwealth v. Bazemore*, 614 A.2d 684, 685 (Pa. 1992). However, an unavailable witness's prior recorded testimony is admissible at trial and will not offend the defendant's right of confrontation, if the defendant had counsel and a full and fair opportunity to cross-examine that witness at the prior proceeding. *Commonwealth v. McCrae*, 832 A.2d 1026, 1034-35 (Pa. Super. 2003). *See also* 42 Pa.C.S. § 5917 (note of evidence at former trial). "The test for availability under the Sixth Amendment is broad: a witness is unavailable if the prosecution has made a good faith effort to introduce its evidence through the live testimony of the witness and, through

_____

[5] For ease of disposition, we have consolidated and rephrased Levitt's issues on appeal. Levitt's Statement of Questions Presented contained four questions; however, Levitt only briefed the first three. Furthermore, questions three and four are merely continuations of Levitt's argument for question two. Accordingly, we will address the merits of Levitt's first two claims.

no fault of its own, is prevented from doing so." ***Commonwealth v. Melson***, 637 A.2d 633, 637 (Pa. Super. 1994) (citation omitted). A determination as to what constitutes a good faith effort to locate a witness is within the discretion of the trial court, whose decision will not be overturned absent an abuse of discretion. ***Commonwealth v. Lebo***, 795 A.2d 987, 990 (Pa. Super. 2002).

Regarding Spicer's availability to testify at trial, the Commonwealth proffered testimony from Philadelphia Police Officer Sylvia Morales. Officer Morales testified that she was assigned to the Office of the Philadelphia District Attorney to locate and serve witnesses and defendants. She further testified that she searched the local, state and federal custody records for Spicer. N.T. Hearing, 5/2/12, at 39-40. In addition to these searches, Officer Morales also searched the welfare records, court subpoena service's records, the medical examiner's records as well as the records of all of the hospitals in the Philadelphia region and was unable to locate him. ***Id.*** Officer Morales also testified that a detective from the District Attorney's office had received the original assignment to locate Spicer in July of 2012 and had conducted a similar search at that time with the same results. Additionally, the Commonwealth visited Spicer's last known address and tried to reach him via cellphone. At the conclusion of the hearing, the court determined that Spicer was unavailable to testify at trial.

Having determined that Spicer was unavailable, the court was required to determine whether Levitt, through his counsel, had a full and fair

opportunity to cross-examine Spicer at the preliminary hearing. ***McCrae***, ***supra***. Here, the court reviewed the notes of testimony from the preliminary hearing and determined that, although counsel had an opportunity to cross-examine Spicer, he chose not to do so. As the trial court explained, "I have received the notes of testimony from the preliminary hearing. At no time was defense counsel prevented from asking any questions he wanted to ask. So there was a full opportunity to cross-examine. The parties were the same. The issues were the same." N.T. Hearing, 5/2/12, at 62-3. Levitt takes issue with the fact that counsel did not ask Spicer a single question. However, this Court has previously determined that where a defendant has an opportunity to cross-examine a witness in a preliminary hearing, but chooses not to do so, the condition is still satisfied. ***See Commonwealth v. Stays***, 70 A.3d 1256, 1265 (Pa. Super. 2013).

Following our review of the record and the relevant case law, we discern no abuse of discretion in the court's conclusions that Spicer was unavailable for trial and that Levitt had an opportunity to cross-examine Spicer. Accordingly, the trial court did not abuse its discretion in admitting Spicer's testimony from the preliminary hearing.

In his second issue, Levitt argues that the trial court erred when it denied his request for a continuance so that he could retain new counsel.

> It is well settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court. Further[,] a trial court's decision to deny a request for a

- 5 -

continuance will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error in judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. In addition to guaranteeing representation of the indigent, these constitutional rights entitle an accused to choose at his own cost and expense any lawyer he may desire. The right to counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney.

We have held, however, the constitutional right to counsel of one's choice is not absolute. Rather, the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. At the same time, however, we have explained that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

***Commonwealth v. Prysock***, 972 A.2d 539, 542-43 (Pa. Super. 2009) (quotations and citations omitted).

Instantly, Levitt waited until May 1, 2012, two business days before trial was scheduled to commence, to apprise the trial court of his desire to retain new counsel because he was dissatisfied with his current representation and needed additional time to secure the services of new counsel or, in the alternative, additional time to prepare to represent himself

at trial. N.T. Hearing, 5/1/12, at 4-5. Despite Levitt's request, his attorney, Douglas Dolfman, Esquire, represented that he had prepared the case and was ready to go to trial. *Id.* at 6. Attorney Dolfman later indicated he was unaware of Levitt's dissatisfaction or that Levitt was actively pursuing new counsel. N.T. Hearing, 5/2/12, at 36. The court continued consideration of Levitt's request to the next day.

The following day, May 2, 2012, the court conducted a hearing on Levitt's request for a continuance. The court began by reviewing Levitt's history with counsel since his arrest on March 4, 2008. Initially, the Defender Association represented Levitt; however, Levitt grew dissatisfied with the Defender assigned to him and requested that another Defender be assigned. *Id.* at 6. On July 20, 2009, the eve of trial, Levitt requested a continuance stating that he wished to represent himself *pro se* and refused to "discuss the matter with counsel." *Id*. at 8. The court granted Levitt's request for a continuance. On August 26, 2009, the Defender Association filed a motion to withdraw as counsel, which the court granted, following a hearing on August 31, 2009. The court then appointed Lloyd Long, Esquire, to represent Levitt. Subsequently, Levitt hired Attorney Dolfman to represent him, and Attorney Long withdrew. Attorney Dolfman entered his appearance on August 5, 2011.

The court next inquired into the underlying causes of Levitt's dissatisfaction with Attorney Dolfman. Levitt replied,

- 7 -

> We never had a chance to talk about this case except he was telling me he was going to look into it. I don't even understand what he got paid for because he didn't do anything. He came and saw me, we signed the papers for him to go to the bank and get the money, and that was it.

*Id.* at 13. Levitt later explained that he did not trust Attorney Dolfman. *Id.* at 33. Levitt further testified that he had known for at least two months prior to making his request that he was dissatisfied with Attorney Dolfman's representation, but waited until two weeks before trial to send out at least "12 to 13 letters to separate lawyers," in an unsuccessful attempt to obtain new representation. *Id.* at 3, 13-14, 36.

In considering the motion for continuance, the trial court weighed Levitt's right to counsel of his choice against the state's interest in the efficient administration of justice. *Prysock*, *supra*. The trial court concluded that Levitt's actions amounted to an attempt "to unreasonably clog the machinery of justice" and to "hamper and delay the state's efforts to effectively administer justice." Trial Court Opinion, 7/30/14, at 6; *Id.*

Under the circumstances of this case, we find no abuse of discretion in the trial court's refusal to grant Levitt's request for a continuance. Most importantly, in 2009 the court granted Levitt a continuance, on the eve of trial, for the same reason. We also cannot overlook the fact that Levitt claims he knew he wanted a new attorney two months prior to trial, yet waited until the eve of trial to request a continuance. Furthermore, Levitt waited until two weeks before trial to look for a new lawyer. The trial court sufficiently inquired into the underlying circumstances of Levitt's request for

a continuance and determined that Levitt was ably represented by counsel and there were no irreconcilable differences which would merit granting the continuance.[6] **Prysock**, **supra**.

Levitt claims that the trial court's denial of his request for a continuance left him with two hollow choices – either to be represented by Dolfman or to proceed *pro se*. Levitt analogizes this alleged ultimatum to an involuntary and unknowing waiver of his right to counsel. In support of his position, Levitt relies on **Commonwealth v. Grant**, 323 A.2d 354 (Pa. Super. 1974). His reliance, however, is misplaced.

In **Grant**, this Court granted relief because the trial court ordered Grant to proceed *pro se*, after he expressed a desire to be represented by private counsel rather than court-appointed counsel, without first conducting an adequate colloquy. **Id**. at 358. Moreover, here, the court gave Levitt the option of going to trial with Attorney Dolfman, who was prepared for trial, or to proceed *pro se*. Levitt elected to represent himself, and the court promptly conducted a colloquy to determine whether Levitt could represent himself and whether he knowingly waived his right to counsel. At the conclusion of an extensive colloquy, and with the benefit of a mental competency evaluation, the court concluded that Levitt was capable of

---

[6] We base this on Attorney Dolfman's representations that he was prepared to go to trial and the conclusion reached by James G. Jones, M.D., that Levitt was "capable of cooperating with his attorney in his own defense." Mental Health Evaluation, 5/1/12, at 3.

representing himself. Furthermore, the trial court, as a precautionary measure, appointed Attorney Dolfman as standby counsel. ***See, e.g., Commonwealth v. Spotz***, 47 A.3d 63 (Pa. 2012) (advisable to appoint standby counsel to attend proceedings and be available for consultation and advice when defendant has waived right to counsel for trial). Based on the foregoing, the trial court did not abuse its discretion in denying Levitt's request for a continuance.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/2/2015