J-A08024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JOSHUA CARLOS OVALLES | |
| Appellee | No. 1406 MDA 2014 |

Appeal from the Order of July 31, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No.: CP-40-CR-0002711-2013

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED MAY 18, 2015**

The Commonwealth appeals the July 31, 2014 order denying its motion *in limine* to present the preliminary hearing testimony of E.R., an unavailable witness. The learned trial court erred in holding that the Commonwealth failed to satisfy the former testimony exception to the hearsay rule. Accordingly, we reverse the order denying the Commonwealth's motion, and we remand for additional proceedings consistent with this memorandum.

The trial court set forth the pertinent factual and procedural history of this case as follows:

> On July, 7, 2013[,] at approximately 1:20 a.m., Wilkes-Barre City Police officers were dispatched to the area of 174 South

---

[*]     Retired Senior Judge assigned to the Superior Court.

Grant Street, Wilkes-Barre, for a fight in progress with gunshots fired. Officers on the scene discovered the victim, Vaughn Kemp [("Kemp")], lying motionless in the backyard of 174 South Grant Street. [Kemp] had two gunshot wounds in his lower back area. [Kemp] was transported to Geisinger Wyoming Valley Hospital for treatment. On July 7, 2013, at approximately 2:05 a.m., [Kemp] was pronounced dead. After a post[-]mortem examination, the cause of death was determined to be multiple gunshot wounds, and the manner of death was ruled a homicide.

On July 9, 2013, a number of individuals who were at the scene of the homicide were interviewed by police investigators. One such individual was [E.R.,] a juvenile. [E.R.] identified the shooter as being Joshua Ovalles ("Ovalles") the [d]efendant in the above-captioned case.

Ovalles was arrested on July 9, 2013[, and was] charged with one count of [criminal homicide.[1]] A preliminary hearing was held on August 21, 2013, after which the charge of [h]omicide was forwarded to the Court of Common Pleas of Luzerne County. [E.R.] testified at the preliminary hearing on behalf of the Commonwealth. Ovalles was formally arraigned on October 11, 2013. After multiple continuances requested by [Ovalles] were granted, a bench trial was scheduled for July 14, 2014.

Trial Court Opinion ("T.C.O."), 9/12/2014, at 1-2.

On July 9, 2014, the Commonwealth filed a motion *in limine* seeking to introduce at trial E.R.'s preliminary hearing testimony pursuant to Pennsylvania Rule of Evidence 804. *See* Pa.R.E. 804(b)(1) (excluding a declarant's former testimony from the rule against hearsay where the declarant is unavailable as a witness). On July 14, 2014, the trial court heard testimony and argument on the Commonwealth's motion. That court has provided us a thorough summary of the hearing testimony:

---

[1]    18 Pa.C.S. § 2501.

The Commonwealth called four [] witnesses in an effort to prove the unavailability of [E.R.]  Joseph Bitzer was called to testify on behalf of the Commonwealth.  [Bitzer] was a detective with the Wilkes-Barre City Police Department in July of 2013.  When the investigation of this case began, [E.R.,] an alleged witness to the incident, was seventeen [] years old.  Based upon a statement that [E.R.] gave to [Bitzer,] it was determined that [E.R.] was a material witness.  At some point in late 2013, [Bitzer] contacted Children and Youth Services in order to obtain security for [E.R.] in that [E.R.] was fearful for his life based upon his testimony from the preliminary hearing.  Bitzer, through Children and Youth Services, offered [E.R.] multiple security options, but [E.R.] stated that he was still fearful.  Bitzer believed that [E.R.] was still in the United States as of early 2014.

Detective James Noone testified on behalf of the Commonwealth.  Detective Noone stated that prior to trial he contacted the [Federal Bureau of Investigation's] Scranton Office.  The FBI confirmed that [E.R.] left the United States and was currently in the Dominican Republic.

Detective Charles Jensen testified on behalf of the Commonwealth.  Detective Jensen recalled that [the] trial in this case was originally scheduled for April [14,] 2014.  Prior to that date, [Detective Jensen] went to [E.R.'s] home . . . in Wilkes-Barre to determine [E.R.'s] whereabouts.  Detective Jensen went to this address several times [prior] to April of 2014 and located [E.R.] there, however, [E.R.] could not be found at that address after April 2014.  Detective Jensen knew that [E.R.] was going to high school in Wilkes-Barre up until the end of 2013.  Detective Jensen was at [E.R.'s] residence in July of 2014 and spoke to [E.R.'s] mother[,] who informed [him] that [E.R.] was in the Dominican Republic living with his grandfather, and that he had no intention of returning to the United States.

Assistant District Attorney Mary Phillips was called as a witness for the Commonwealth.  Attorney Phillips testified that she attended a [d]ependency [h]earing with regard to [E.R.]  At said hearing, it was revealed that [E.R.] was attending high school since the beginning of the school year.  Attorney Phillips was part of a team [that] developed a plan to transport [E.R.] to and from school to make sure he was safe.  [E.R.] did attend school for a few days, but then stopped attending.  On December 25, 2013, [E.R.] turned eighteen [] years old, at which time Children and Youth Services terminated their involvement in his case.

Attorney Phillips testified that at that point in time, the Commonwealth had no reason to request material witness bail.

T.C.O. at 3-4 (citations to notes of testimony omitted).

At the conclusion of the hearing, the trial court denied the Commonwealth's motion *in limine*. The trial court held that the Commonwealth failed to demonstrate by a preponderance of the evidence that E.R. was unavailable as a witness. Specifically, the trial court reasoned that "[t]he Commonwealth's failure to monitor the whereabouts of [E.R.] illustrate[d] a lack of diligence on their part, especially considering the serious nature of the case and the fact that [E.R.] was a material witness for the Commonwealth." *Id.* at 5.

On July 31, 2014, the Commonwealth timely filed a notice of appeal.[2] The trial court did not order the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 12, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). The Commonwealth presents one issue for our consideration: "Whether the trial court erred when it ruled the [f]ormer [t]estimony of

---

[2]     Pursuant to Pa.R.A.P. 311(d), the Commonwealth certified in its notice of appeal that the trial court's July 31, 2014 order substantially handicapped or terminated the prosecution. Accordingly, this Court has jurisdiction to review the Commonwealth's assertion of trial court error. **See Commonwealth v. Cosnek**, 836 A.2d 871, 877 (Pa. 2003) (stating that Rule 311(d) applies to pretrial rulings that result in suppression, preclusion, or exclusion of the Commonwealth's evidence).

[E.R.] was inadmissible because the Commonwealth failed to show sufficient due diligence to locate the witness?" Brief for Commonwealth at 4.

"In evaluating the denial or grant of a motion *in limine*, our standard of review is the same as that utilized to analyze an evidentiary challenge." ***Commonwealth v. Pugh***, 101 A.3d 820, 822 (Pa. Super. 2014) (*en banc*).

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Id.*** (quoting ***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010)).

Pennsylvania Rule of Evidence 804(b), an exception to the hearsay rule, allows for the admission of a witness' former testimony in certain limited circumstances.

> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1) Former Testimony. Testimony that:
>
>> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>>
>> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(b)(1).

Rule 804 renders a declarant's prior testimony admissible when the declarant is unavailable as a witness. Subsection (a)(5) of the Rule explains that a declarant is unavailable when he or she "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance." Pa.R.E. 804(a)(5). Thus, the mere assertion that a declarant is unavailable as a witness is insufficient to invoke the former testimony exception. A witness is unavailable if the prosecution makes a good faith effort to produce the live testimony of the witness, yet, through no fault of its own, is prevented from doing so. *Commonwealth v. Melson*, 637 A.2d 633, 638 (Pa. Super. 1994). Exactly how far the prosecution must go to procure the recalcitrant witness' attendance is a question of reasonableness. *Id.*; *see also Consol. Rail Corp. v. Delaware River Port Auth.*, 880 A.2d 628, 630 (Pa. Super. 2005) (holding that the proponent must demonstrate a good faith effort to procure the declarant's attendance at trial).

Instantly, Charles Jensen, a detective with the Wilkes-Barre City Police Department, visited E.R. at his mother's residence several times prior to Ovalles' scheduled trial date. In April of 2014, Detective Jensen could no longer locate E.R. at this address. In July of 2014, Detective Jensen, again, went to E.R.'s mother's home. Detective Jensen spoke with E.R.'s mother, who told Detective Jensen that E.R. had moved to the Dominican Republic, and that he did not intend to return to the United States.

James Noone, a detective with the Luzerne County District Attorney's Office, enlisted the help of the Federal Bureau of Investigation in locating E.R. With the assistance of the Transportation Security Administration, the FBI confirmed that E.R. had traveled on a flight from the United States to the Dominican Republic, and had not since returned.

These efforts constitute a good faith effort to procure E.R.'s attendance at trial. **Compare Commonwealth v. Douglas**, 737 A.2d 1188 (Pa. 1999) (finding that the Commonwealth made a good faith effort to locate a witness where police searched for the witness at his apartment, at his mother's apartment, at a number of bars he was known to frequent, and at his girlfriend's house). The Commonwealth tried several times to locate E.R. at his last known address. After interviewing E.R.'s mother, the Commonwealth learned that E.R. had left the country and did not intend to return. The Commonwealth then corroborated E.R.'s mother's claims with the assistance of multiple federal agencies. Only after the Commonwealth determined that E.R. was outside of the jurisdiction—and beyond the trial court's subpoena powers[3]—did it seek to admit E.R.'s prior testimony.

The trial court held that the Commonwealth failed to demonstrate that E.R. was unavailable for the purposes of Rule 804. Specifically, the trial

---

[3] **See** 42 Pa.C.S. § 5905 ("Every court of record shall have power in any civil or criminal matter to issue subpoenas to testify, with or without a clause of *duces tecum*, into any county of this Commonwealth to witnesses to appear before the court . . . .").

court reasoned that "[t]he Commonwealth's failure to monitor the whereabouts of [E.R.] illustrate[d] a lack of diligence on their part, especially considering the serious nature of the case and the fact that [E.R.] was a material witness for the Commonwealth." T.C.O. at 5. The trial court principally focused upon the Commonwealth's actions prior to E.R.'s departure, and failed to consider adequately the Commonwealth's subsequent efforts to procure E.R.'s attendance at trial.

When a material witness absconds from the jurisdiction, frequently there will have been additional measures that the Commonwealth could have taken which might have prevented the witness' unavailability. Nevertheless, a witness is unavailable for the purposes of the prior testimony exception where the Commonwealth makes a good faith effort to locate the unavailable witness, but ultimately fails to compel his or her attendance at trial. **Commonwealth v. Lebo**, 795 A.2d 987, 990 (Pa. Super. 2002); **Commonwealth v. Blair**, 331 A.2d 213, 215 (Pa. 1975) (The rule "does not require that the Commonwealth establish that the witness has disappeared from the face of the earth; it demands that the Commonwealth make a good-faith effort to locate the witness and fail."). Because the record establishes that the Commonwealth made substantial efforts to locate E.R., the trial court erred in finding that the Commonwealth failed to demonstrate that E.R. was unavailable to testify at trial.

For the foregoing reasons, E.R.'s preliminary hearing testimony is admissible at trial pursuant to the former testimony exception to the hearsay rule.  **See** Pa.R.E. 805(b)(1).[4]  The trial court not only erred, but also abused its discretion in denying the Commonwealth's motion *in limine*.  The trial court erroneously focused upon the proactive efforts that the Commonwealth could have taken prior to E.R.'s unavailability, rather than upon the substantial efforts made by the Commonwealth to locate E.R. thereafter.

Order reversed.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015

---

[4]  In his appellee's brief, Ovalles argues that the admission of E.R.'s preliminary hearing testimony also would be a violation of his constitutional right to confront the witnesses against him, because he did not have a full and fair opportunity to cross-examine E.R.  **See** Brief for Ovalles at 6-8; **Commonwealth v. Bazemore**, 614 A.2d 684 (Pa. 1992).  This particular issue was not raised by the Commonwealth, as appellant.  Moreover, the trial court did not address Ovalles' argument in its Rule 1925(a) opinion.  We will not review the argument without the trial court having the opportunity to do so in the first instance.  Our ruling is limited to the threshold evidentiary issue presented by the Commonwealth in this appeal.  We offer no opinion on whether the testimony is inadmissible in light of Ovalles' constitutional challenge.